UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES E. HOWZE, JR.,

v.                          Case No. 8:03-cr-226-T-17MSS
                                     8:03-cr-484-T-17EAJ
                                     8:07-cv-524-T-17EAJ

UNITED STATES OF AMERICA.

_____

O R D E R

This cause is before the Court on Defendant James E. Howze, Jr.'s 28 U.S.C. §
2255 amended motion to vacate, set aside, or correct an allegedly illegal sentence
(hereinafter "motion" or "motion to vacate") (CV-7; CR-65).   The Government filed a
response with attachments, and Howze filed a reply. (CV-11, 13).  A review of the record
demonstrates that the motion to vacate must be **denied**.

Procedural History

A federal grand jury in the Middle District of Florida, Tampa Division, returned an
indictment charging Howze, along with four others, with conspiring to manufacture fifty
grams or more of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii)
and possessing pseudoephedrine knowing and having reasonable cause to believe it would
be used to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(c)(2) and Title
18, U.S.C. § 2. CR226 at 1. This case was assigned criminal case number 8:03-cr-226-T-
17MSS.

Previously, a grand jury in the Northern District of Florida, Gainesville Division, had returned a three-count Indictment charging Howze with being a convicted felon in possession of a firearm, in violation 18 U.S.C. §§ 922(g) and 924(a)(2); possessing an unregistered firearm, in violation of 26 U.S.C. §§ 5861(d) and 5871; and possessing a firearm with a serial number that had been removed, obliterated or altered, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B). See Presentence Investigation Report (PSR) ¶¶ 10-13. Those charges were eventually transferred to the Middle District of Florida, Tampa Division, pursuant to Fed. R. Crim. P. 20(a) and assigned criminal case number 8:03-CR-484-T-17EAJ. CR484 at 1.  Elton Gissendanner was appointed to represent Howze in both criminal cases. CR226 at 82; CR484 at 5.

Howze entered guilty pleas in both cases (with written plea agreements) on March 4, 2004. CR226 at 93, 138; CR484 at 2, 11, 13. This Court accepted his guilty pleas in both cases. CR226 at 168; CR484 at 18. Two days before his scheduled sentencing, Howze moved to withdraw both guilty pleas. CR226 at 202; CR484 at 22. After opposition by the Government, CR226 at 210; CR484 at 28, this Court denied Howze's motions to withdraw his guilty pleas. CR226 at 211; CR484 at 29.

This Court sentenced Howze to life imprisonment in Case No. 8:03-CR-226-T-17EAJ, to run concurrently with his 120-month sentence in Case No. 8:03- CR-484-T-17EAJ, a total five years supervised release, and ordered him to pay $8,027.87 in restitution. CR226 at 246-249; CR484 at 39-42.

Howze pursued a direct appeal, CR226 at 250; CR484 at 44. His appeals (which were consolidated) were dismissed due to Howze's appeal waivers. CR484 at 57. On

March 27, 2006, the Supreme Court denied Howze's petition for writ of certiorari. *Howze v. United States*, 126 S. Ct. 1640 (2006). CR484 at 59.

Howze timely filed his § 2255 motion (with supporting memorandum) in both criminal cases. CR226 at 319, 320; CR484 at 60, 61. *See Washington v. United States*, 243 F.3d 1299, 1300 (11th Cir. 2001) (when a prisoner timely petitions for certiorari review, section 2255 limitation period "begins to run when the Supreme Court denies certiorari or issues a decision on the merits."). His § 2255 motions were assigned a single civil case number, 8:07-CV-524-T-17EAJ. CR226 at 03/28/2007 dkt. entry; CR484 at 03/28/2007 dkt. entry. Pursuant to this Court's order, Howze filed an amended § 2255 motion in both criminal cases. CR226 at 322, 329; CR484 at 63, 65.

Factual Background

In his plea agreements, Howze stipulated that he would be sentenced pursuant to the United States Sentencing Guidelines:

> The defendant understands and acknowledges that [his] sentence will be determined and imposed in conformance with the Comprehensive Crime Control Act of 1984 and the federal sentencing guidelines. . . . Knowing these facts, the defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum set forth for the offense and pursuant to the sentencing guidelines . . . .

CR226 at 93, page 12; CR484 at 11.

As to each case, Howze acknowledged that the calculation of his sentence and application of the sentencing guidelines would "be determined solely by the Court" and that any discussions he had with his attorney and/or the prosecutor "regarding the potential application of the sentencing guidelines . . . and any recommendations . . . [would not be] binding on . . . the Court" and he would not be permitted to withdraw his plea. CR226 at 93,

pages 11-12; see CR484 at 2, pages 2, 6. 9. Howze also acknowledged the following

reservation of the Government:

> The United States reserves the right and obligation to report to the Court and
> the United States Probation Office all information concerning the background,
> character, and conduct of the defendant, to provide relevant factual
> information, including the totality of the defendant's criminal activities, if any,
> not limited to the count(s) to which the defendant pleads, to respond to
> comments made by the defendant or defendant's counsel, and to correct any
> misstatements or inaccuracies. The United States further reserves its right
> to make any recommendation it deems appropriate regarding the disposition
> of this case . . . .

CR226 at 93, page10; see CR484 at 2, page 4.

Howze also waived the right to appeal his sentences "directly or collaterally, on any

ground . . . except for an upward departure by the sentencing judge, a sentence above the

statutory maximum, or a sentence in violation of the law apart from the sentencing

guidelines . . . ." CR226 at 93, page 12; CR484 at 11, page 2.

Prior to accepting Howze's guilty pleas, a magistrate judge examined Howze

regarding his competency to enter the plea, questioning him about any influence  5 from

drugs or alcohol, as well as anxiety and depression medication. CR484 at 27, pages 4-5.[1]

Howze and his counsel informed the magistrate judge that Howze had not received any

medication for two months due to his transfer between local jails, and Howze assured the

magistrate judge that he was competent to proceed with the plea. CR484 at 27, pages 5-7.

After Howze declined the magistrate judge's offer to continue the hearing until he could

receive his medication and assured the magistrate judge that he was satisfied with

---

This rearraignment transcript also was filed in Case No. 8:03-cr-226-T-17EAJ at docket number 257.

representation of his counsel (Gissendanner) in both cases, the magistrate judge went forward with the plea colloquy. CR484 at 27, pages 6-7.

The magistrate judge informed Howze that the case would be "governed by the sentencing guidelines" and explained to Howze that the district court would not be able to determine Howze's sentence until after the United States Probation Office had prepared a PSR. CR484 at 27, pages 12, 14. The magistrate judge informed Howze that the sentence imposed might be different from any estimated sentence his counsel had predicted and that, if the district court imposed a more severe sentence than Howze was expecting, he still would be bound by the plea agreement and would not be entitled to withdraw from it. CR484 at 27, page 20. Howze stated that he understood. Id.

During the balance of the plea colloquy, the magistrate judge verified that Howze (1) understood the charges to which he agreed to plead guilty, CR484 at 27, pages 10-11, 15; (2) knew of the potential consequences of his plea, including that he would be subject to a ten-year maximum sentence in the case originating in the Northern District of Florida, a mandatory minimum sentence of ten years and up to life imprisonment in the case originating in the Middle District of Florida, and that the district court might order him to serve his sentences consecutively; id. at pages 21-23, 30; and (3) had not been threatened or coerced into pleading guilty, id. at pages 4, 8,  19. In addition, the magistrate judge verified that a sufficient factual basis supported Howze's guilty plea. CR484 at 27, pages 27-29.

The magistrate judge also reviewed with Howze his waivers of his right to appeal the sentence and asked whether Howze understood the consequences of those waivers. CR484 at 27, pages 18-19. Howze responded that he did:

THE COURT: Now, in regard to both cases . . . you have agreed to give up your right to file any appeal of any sentence that is imposed in either of these cases by the Court, except in very limited circumstances.

First, if the Government, for some reason, were to appeal your sentence, you could file a cross-appeal. Second, if the Court were to impose a sentence against you that exceeded the statutory maximum, then you could challenge that sentence as excessive on appeal. And, third, if the Court were to impose some sort of illegal sentence in some way other than in the calculation of the guidelines, you could challenge that sentence as being illegal. But only in those limited circumstances can you file an appeal.

If you attempt to file an appeal in any other circumstance, in all likelihood the Appeals Court will not even look at your appeal to see whether it has any value or merit because you have already given up your right to file an appeal. Do you understand that?

MR. HOWZE: Yes, Ma'am.

THE COURT: Sir, has anyone threatened you to get you to waive your right to appeal?

MR. HOWZE: No, Ma'am.

THE COURT: Has anyone promised you anything in exchange for that waiver?

MR. HOWZE: No, Ma'am.

CR484 at 27, pages 18-19.  At the conclusion of the hearing, the magistrate judge found that Howze was competent to enter his guilty plea and that the plea was knowing and voluntary. CR484 at 27, page 32.

The probation office recommended that the district court establish Howze's base offense level at 34 because his offenses had involved the equivalent of 4467 kilograms of marijuana, USSG §2D1.1(c)(3); increase his offense level by 2 because Howze had possessed a sawed-off shotgun while on a trip to steal anhydrous ammonia with which he intended to manufacture methamphetamine, USSG §2D1.1(b)(2); increase his offense level

6

by 3 because his manufacture of methamphetamine had created a substantial harm to human life or the environment, USSG §2D1.1(b)(5)(B); increase his offense level by 4 because Howze had organized the conspiracy to manufacture methamphetamine and had directed the activities of other participants, USSG §3B1.1(a); reduce his offense level by 3 because Howze had accepted responsibility for his criminal conduct, USSG §3E1.1(a), (b); establish Howze's total offense level at 40 and his criminal history category at VI; and impose a sentence of 360 years' to life imprisonment. PSR ¶¶ 60-62, 64, 66-70, 88, 121.

Howze objected to the PSR, asserting that he should be held responsible for the equivalent of 649.14 kilograms of marijuana; that the assessment for environmental risk was unwarranted; and that he was not an organizer or leader in the criminal activity because all co-conspirators had functioned at the same level in order to manufacture methamphetamine for personal consumption. Addendum to PSR. Howze objected further, in light of *Blakely v. Washington*, 542 U.S. 296 (2004), to the enhancement of his sentencing guidelines range based upon "unproven and unadmitted facts." Id.

After the district court accepted his guilty pleas, CR484 at 18; CR226 at 202, and prior to his sentencing hearing, Howze moved to withdraw his guilty pleas. CR484 at 22. He asserted that, prior to signing the plea agreement in the case originating in the Northern District of Florida, his counsel, Thomas Miller, had failed to discuss the facts or legal issues pertaining to the case filed in the Middle District of Florida. CR484 at 22. Specifically, Howze asserted that until he received his PSR, he had not known that unindicted co-conspirator Thomas Williams had reported that Howze had manufactured a total of approximately 689 grams of methamphetamine or that he was considered an organizer or leader of criminal activity and that, if he had known of these allegations, he would not have

7

entered his guilty pleas.[2]  CR484 at 22, pages 3-4. After response by the Government, CR484 at 28, which the district court found persuasive and incorporated by reference, the Court denied Howze's motion to withdraw his guilty plea. CR484 at 29.

     At the sentencing hearing, Howze testified that he, Tim Hose, Teresa Sutton, and Jason Meyer had manufactured methamphetamine together primarily for the purpose of getting high and that no one had worked for any other person. CR484 at 52, pages 20, 22, 25, 33-34, 37-38. Howze testified further that Williams never had helped him manufacture methamphetamine.  CR484 at 52, page 21.  Howze also denied manufacturing methamphetamine in quantities over 100 grams, stating that, on six or seven occasions, he had manufactured only twenty-eight grams of methamphetamine and that he sold methamphetamine that was fifty percent pure. CR484 at 52, pages 21, 36. Howze also testified that, when he had gone to Gainesville in order to secure materials to manufacture more methamphetamine, he had possessed a saw-off shotgun. CR484 at 52, page 27.

     Howze explained that although he had admitted his guilt by signing his plea agreement, he had moved to withdraw his guilty plea in order to clarify that he had the same role as the others who had manufactured methamphetamine with him. CR484 at 52, pages 30-32.

     Meyer, Howze's nephew, testified that, at Howze's insistence, he had learned part of the process for manufacturing methamphetamine and that he, Howze, and Hose had made methamphetamine at the home Howze and Meyer shared. CR484 at 52, pages 45-

---

  Williams reportedly told investigators that he had observed Howze manufacture methamphetamine, that he also had helped Howze manufacture methamphetamine six or seven times, that he and Howze had made approximately 113.4 grams of methamphetamine on most occasions and approximately 122 grams of methamphetamine on one occasion. PSR ¶ 38.

47, 64, 68. (Howze's elderly mother owned the home but did not live there. CR484 at 52, page 109.) After Meyer had learned the process, Howze had made him responsible for gathering the materials to manufacture the methamphetamine and cleaning up after the process was complete. CR484 at 52, pages 48, 70. According to Meyer, Williams and numerous other people had brought Howze the materials; Howze had paid for the materials with either money or methamphetamine; and Howze had made arrangements with others to manufacture methamphetamine at various locations in central Florida. CR484 at 52, pages 51-53, 56-58. 23.

Meyer testified further that, in 2002, he and Howze had manufactured methamphetamine almost every day; that, in 2003, they had done so only two to three times per week; that they ordinarily had produced three to six ounces of pure methamphetamine at a time; and that Howze had sold the methamphetamine for $900 per ounce. CR484 at 52, pages 48-50, 66.

Detective Michael Mielke, who had interviewed numerous persons involved in Howze's methamphetamine manufacturing activities, testified that Howze had organized many methamphetamine "cooks" and that numerous people had assisted him by acquiring and storing the required materials, allowing Howze and others to manufacture the methamphetamine on or near their property, selling the methamphetamine, and disposing of the waste materials. CR484 at 52, pages 78-80. Detective Mielke also testified that, during the search of a property where Howze had organized a "cook," he had observed numerous cylinders used for storing anhydrous ammonia, including two 250-pound and three ten-pound tanks. CR484 at 52, pages 83-84, 95-96.

Detective Mielke also testified that, because the methamphetamine manufacturing materials, including anhydrous ammonia, are not safe to breathe, law enforcement personnel wear protective clothing issued by the Drug Enforcement Administration to investigate a "cook" site. CR484 at 52, pages 102-03.

The district court overruled Howze's objection to the drug quantity determination because Howze conceded that his base offense level would be the same without inclusion of the quantity of methamphetamine Williams had reported. CR484 at 52, page 127. The court also overruled Howze's objection to the firearm enhancement because Howze, a convicted felon, had taken a sawed-off shotgun with him on a trip to secure anhydrous ammonia. CR484 at 52, page 129. Based upon Howze's use of his mother's home to manufacture methamphetamine, the dangerous materials found during the search of the home, and Howze's control over the methamphetamine manufacturing scheme, the court overruled Howze's objection to the environmental hazard and role enhancements. CR484 at 52, pages 131-34; see PSR ¶¶ 24-26, 53. The court also granted the Government's request to withdraw the three-level reduction for acceptance of responsibility based upon Howze's motion to withdraw his guilty plea, resulting in a total offense level of 43 and a guidelines range of life imprisonment. CR484 at 52, pages 135-36.[3]

---

Compare  withdrawal of concession in a plea agreement. See *United States v. Buchanan,* 131 F.3d 1005, 1008 (11th Cir. 1997); *Nunez v. United States,* --- F.3d ---, 2007 WL 2177125 (7th Cir. 2007)(When a defendant violates a plea agreement by appealing despite a promise not to do so, the prosecutor may withdraw concessions made as part of the bargain.*); United States v. Whitlow,* 287 F.3d 638 (7th Cir. 2002) (defendant's breach of promise in plea agreement not to appeal except as to issue of which of two versions of the Sentencing Guidelines applied would entitle prosecutor on remand to reinstate any of charges that were dismissed pursuant to the plea agreement); *United States v. Hare*, 269 F.3d 859 (7th Cir. 2001)

The district court ordered Howze to serve concurrent terms of life imprisonment for the conspiracy offense and 120 months for the firearm offense, stating that the sentence "adequately addresse[d] the seriousness of the crimes committed[.]" CR484 at 52, pages 143-44. 28. On direct appeal, Howze claimed that the district court erred (1) in permitting the Government to withdraw the three-level reduction for acceptance of responsibility; (2) in assessing enhancements to the Howze's sentence which he did not admit to and were not found by a jury in violation of his Sixth Amendment rights, *Blakely, Booker and Apprendi*; (3) in assessing a two-level upward adjustment pursuant to USSG §2D1.1(B)(1) (citing *Blakely and Booker*); (4) in denying Howze's motion to withdraw his guilty plea because Howze's guilty plea was not knowing and voluntary; and (5) that the plea agreement appeal waiver is not enforceable because it was not knowingly and voluntarily entered (a defendant cannot waive a right he does not know exists.)

The Government responded to Howze's appellate brief with a combined motion to dismiss his appeal due to Howze's plea agreement appeal waiver and motion for summary affirmance.  After Howze filed a reply brief, the Eleventh Circuit Court of Appeals granted the Government's motion to dismiss based on valid appeal waivers contained in both plea agreements and affirmed the district court's denial of Howze's motion to withdraw his guilty pleas. CR484 at 57.

Howze filed a petition for writ of certiorari with the Supreme Court, arguing that the district court (1) erred in finding that Howze did not accept responsibility; (2) violated Howze's Sixth Amendment rights by enhancing his sentence due to role and risk to human life or the environment; (3) penalized Howze for possession of a weapon not connected to

11

the offense; (4) erred in denying Howze's motion to withdraw his guilty plea; and (5) improperly applied the appeal waiver.

## PRIOR RESOLUTION

Howze is not entitled to review of his pending claims because the Eleventh Circuit already has decided them as discussed above. "Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (quoting *United States v. Natelli*, 553 F.2d 5, 7 (2d Cir. 1977)); *see also Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (section 2255 motion is "neither a recapitulation of nor a substitute" for direct appeal; absent changed circumstances of fact or law, court will not reconsider an issue already decided on direct appeal).[4]

To the extent that Howze is arguing these claims were not raised due to ineffective assistance of counsel, that assertion is negated by the record. Howze's counsel did try to the raise the claims Howze now advances when he filled his appellate brief and Supreme Court petition. (See Attachments 1 and 4 to the Government's response). Those claims were dismissed due to Howze's appeal waivers, waivers which the Eleventh Circuit Court of Appeals found to be valid.

## WAIVER

Howze has waived the right to appeal his sentence (twice), directly or collaterally, on the grounds he raises in this petition. Accordingly, this Court will not consider them. The

---

As discussed above, Howze attempted to withdraw his guilty pleas before sentencing, arguing that his pleas were not knowing and voluntary in light of information he learned upon receipt of his PSR. CR484 at 22, pages 3-4.

right to appeal is statutory and can be waived knowingly and voluntarily. *See Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir.), *cert denied*, 126 S. Ct. 246 (2005); *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993). For this Court to enforce an appeal waiver contained in a plea agreement, the Government need only demonstrate either that this Court specifically questioned the defendant concerning the sentence appeal waiver during the Fed. R. Crim. P. 11 colloquy or that it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver. Williams, 396 F.3d at 1342; Bushert, 997 F.2d at 1351.

A defendant's waiver of the right to appeal "directly or collaterally" encompasses his right to challenge his sentence in a section 2255 proceeding. *See Williams*, 396 F.3d at 1342; *United States v. White*, 307 F.3d 336, 341-44 (5th Cir. 2002); *Garcia-Santos v. United States*, 273 F.3d 506, 508-09 (2d Cir. 2001); *Davila v. United States*, 258 F.3d 448, 451-52 (6th Cir. 2001); *United States v. Cockerham*, 237 F.3d 1179, 1183-87 (10th Cir. 2001); *Mason v. United States*, 211 F.3d 1065, 1069-70 (7th Cir. 2000). The waiver is enforceable against claims of ineffective assistance of counsel at sentencing, because "a contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." *Williams,* 396 F.3d at 1342; *see also Cockerham*, 237 F.3d at 1182 (appeal and collateral attack  waiver provision in plea agreement waives the right to section 2255 petition based on ineffective assistance of counsel unless challenge concerns the validity of the plea or waiver); *Mason*, 211 F.3d at 1069 (same). In particular, if the complaint underlying the ineffective assistance claim was waived by a defendant's plea agreement, then the ineffective assistance claim also was waived. *See*

13

*Williams*, 396 F.3d at 1342 (acknowledging that exceptions in plea agreement to defendant's waiver of appeal did not apply to the claims raised in the petition); *United States v. Djelevic*, 161 F.3d 104, 107 (2d Cir. 1998) (although "dress[ed] up" as a Sixth Amendment claim, defendant really is challenging the correctness of his sentence under the guidelines and, therefore, is barred by the plain language of his plea agreement; to allow his claim would be to "render[ ] meaningless" such plea agreement waivers).

As discussed above, the Eleventh Circuit Court of Appeals found that Howze's appeal waiver contained in his plea agreements, which included challenges to his sentence raised either "directly or collaterally on any ground," were valid. The Supreme Court refused to review Howze's appeal waiver claim. Howze's claims in his pending § 2255 motion are challenges to his sentence now being raised under the guise of ineffective assistance of counsel in to attempt to circumvent the terms of his sentence-appeal waivers.

Howze claims that "[n]one of the foregoing grounds have been previously presented. This is Howze's first opportunity for presenting such grounds, all of which involve ineffective assistance of counsel." CV-7 at 9. Contrary to Howze's assertion, however, Howze's counsel did raise the claims Howze now advances before the district court (challenge to his guilty pleas), in Howze's appellate brief and in his petition for Supreme Court review. On direct appeal, those claims were dismissed due to Howze's appeal waivers, waivers which the Eleventh Circuit Court of Appeals found to be valid. Likewise, the Supreme Court refused to review any of Howze's claims. Howze's unsupported conclusory ineffective assistance of counsel allegations regarding "misrepresentations", "inducements" and "lies" allegedly made by his counsel are negated by Howze's very thorough Rule 11 plea colloquy.

14

Even if this Court considered Howze's claims under the ineffective assistance of counsel analysis, however, his claims are without merit and entitle him to no relief for the reasons discussed below.

**MERITS**

The Sixth Amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The benchmark for judging any claim of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *see also Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1984). Because a lawyer is presumed to be competent to assist a defendant, the burden is on the accused to demonstrate the denial of the effective assistance of counsel. *United States v. Cronic*, 466 U.S. 648, 658 (1984). Ineffectiveness of counsel may be grounds for vacating conviction if (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the defendant was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687, 694. "There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. Thus, if the defendant fails to show that he is prejudiced by the alleged errors of counsel, this Court may reject the defendant's claim without determining whether the counsel's performance was deficient. *See Coulter v. Herring*, 60 F.3d 1499, 1504 n.8 (11th Cir. 1995).

For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional

competence. *See Strickland*, 466 U.S. at 690. In other words, when reviewing counsel's decisions, "the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)). Furthermore, "[t]he burden of persuasion is on a petitioner to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable." *Chandler*, 218 F.3d at 1313. This burden of persuasion, though not insurmountable, is a heavy one. *See id.* at 1314. "'Judicial scrutiny of counsel's performance must be highly deferential,'" and courts "must avoid second-guessing counsel's performance." *Id.* at 1314 (quoting *Strickland*, 466 U.S. at 689). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Id.* (quoting *Strickland*, 466 U.S. at 689-90). Therefore, "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'" *Id.* (quoting *Darden v. Wainwright*, 477 U.S. 168 (1986)).

If the record is incomplete or unclear about counsel's actions, then it is presumed that counsel exercised reasonable professional judgment. *See Chandler*, 218 F.3d at 1314-15 n.15. Thus, the presumption afforded counsel's performance "is not . . . that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not to do a specific act." *Id.* Rather, the presumption is "that what the particular defense lawyer did at trial . . . were acts that some reasonable lawyer might do." *Id.* Moreover, "[t]he reasonableness of a counsel's performance is an objective inquiry." *Chandler*, 218 F.3d at 1315. For a Petitioner to show deficient performance, he "must establish that no competent

16

counsel would have taken the action that his counsel did take." *Id.* To uphold a lawyer's strategy, a court "need not attempt to divine the lawyer's mental processes underlying the strategy." *Id.* at 1315 n.16. Finally, "[n]o absolute rules dictate what is reasonable performance for lawyers." *Id.* at 1317.

Issue One at (1)

Howze claims that his guilty plea was involuntary, unintelligent and unknowing for five reasons: (1) plea induced because Howze was told he would receive a sentence of less than life imprisonment; (2) plea induced because Howze was told he would receive a sentence reduction pursuant to USSG § 5K1.1; (3) plea induced due to misrepresentations regarding drug quantity; (4) plea induced by misrepresentations made regarding sentence enhancements; and (5) plea induced by misrepresentation regarding a three-level downward adjustment for acceptance of responsibility. CV-2 at 4-10; CV-7 at 4. Howze's claims are contradicted by the record.

As discussed above, during his change of plea hearing, Howze acknowledged that he understood that the calculation of his sentence and application of the sentencing guidelines would "be determined solely by the Court" and that any discussions he had with his attorney and/or the prosecutor "regarding the potential application of the sentencing guidelines . . . and any recommendations . . . [would not be] binding on . . . the Court" and he would not be permitted to withdraw his plea. CR226 at 93, pages 11- 12; see CR484 at 2, pages 2, 6. Howze confirmed that he understood that the district court would not be able to determine Howze's sentence until after the United States Probation Office had prepared a PSR. CR484 at 27 at 12, 14. Howze acknowledged that he understood that if the sentence imposed was different from any estimated sentence his counsel had predicted

and that, if the district court imposed a more severe sentence than Howze was expecting,

he still would be bound by the plea agreement and would not be entitled to withdraw from

it. CR484 at 27 at 20. Howze also confirmed that he faced a possible sentence of life in

prison. CR484 at 27, pages 21- 23, 30. Howze confirmed that he had not been threatened

or coerced into pleading guilty, id. at 4, 8, 19. Furthermore, Howze was specifically asked

if there were any promises made which lead him to enter his guilty plea:

> THE COURT: Does this plea agreement contain all of the promises that lead
> you to enter a plea in this case today?
>
> MR. HOWZE: Yes, Ma'am.
>
> THE COURT: Has anyone made any secret under the table promise to you
> that you're relying upon?
>
> MR. HOWZE: No, Ma'am.
>
> THE COURT: Has anyone told you they can predict with certainty what your
> sentence will be if you enter a plea in this case?
>
> MR. HOWZE: No, Ma'am.
>
> THE COURT: Sometimes when you are negotiating with the Government or
> consulting with others, people may attempt to predict for you what your
> sentence will be either based upon what they think they know about a judge's
> sentencing practices or based upon what they think your guideline range will
> be, but you need to understand that any such guess like that or even promise
> if it were made is merely a guess or a suggestion and does not bind the
> District Judge. . . . Do you understand that?
>
> MR. HOWZE: Yes, Ma'am.

CR484 at 27, pages 19-20.

Issue One at (2)

Howze next claims that his plea was induced with a promised sentence reduction

due to cooperation. At his rearraignment, the magistrate judge advised Howze:

18

THE COURT: Now, the Government may make a recommendation to you based upon your cooperation that you receive a favorable sentence, a more favorable sentence. Understand the Government is not obligated to make any such recommendation due to your cooperation. That is just a right the Government has and if the Government chooses not to make a recommendation, then you cannot on that basis at that time withdraw your plea. Do you understand that?

MR. HOWZE: Yes, Ma'am. . . .

THE COURT: Again, you have agreed to cooperate with the Government in this case, as well. . . . You cannot force the Government to make a recommendation for a lower sentence for you and you cannot change your mind about entering a guilty plea and you cannot appeal that decision. Do you understand that?

MR. HOWZE: Yes, Ma'am.

CR484 at 27, pages 13-14, 17.

Prior to sentencing, Howze's counsel attempted to persuade the Government that Howze should receive a § 5K1.1 motion. See Attachment 5 to the Government's Response. At sentencing, Howze's counsel questioned the case agent about Howze's attempts to cooperate. CR226 at 268, pages 98-101. The assessment of the case agent was that Howze gave no "actionable information"; that Howze's information was "unreliable"; and that there was a "veracity issue" with information provided by Howze. Id. at pages 98, 100-01. The case agent further testified that he advised the Government that Howze could not be used as a Government witness against a co-defendant, Demetrius McLaughlin, who was proceeding to trial. Id. at 103. (Howze was called as a witness for the defense during McLaughlin's trial. Id. at 100, 104.) The case agent recounted meeting with Howze prior to his testimony at the McLaughlin trial. Id. at 104. During that meeting, Howze made statements to the case agents which he contradicted thirty minutes later during his testimony at the McLaughlin trial, demonstrating that Howze had no credibility. Id.

19

The plea agreements signed by Howze provided only that the Government would **consider** cooperation rendered by Howze. CR484 at 2, page 5; CR226 at 93, pages 3-4 (emphasis added). They do not contain a **promise** of any sentencing adjustment. (Emphasis added.) The record demonstrates that Howze's counsel did attempt to establish that Howze was entitled to a reduction due to substantial assistance, CR226 at 268, pages, 30-32, and that Howze provided information to law enforcement warranting a sentence reduction, id. at pages 98-101. Counsel's attempts to obtain a downward adjustment due to cooperation were not successful. Id. at page 135. That does not establish, however, that counsel's efforts amounted to ineffective assistance.

Issue One at (3), Issue Two and Issue Four(a)

Howze also claims that his plea was induced due to misrepresentations regarding drug quantity. Howze asserts that his attorney promised to contest the drug quantity but failed to do so at sentencing and also failed to produce an expert to refute the contention that one can manufacture "actual" methamphetamine. CV-2 at pages 9, 11-15, and 23. Howze contends that counsel's representation during sentencing was ineffective.

Howze was charged with and pled guilty to an offense involving fifty grams or more of methamphetamine. Howze's PSR determined that he was accountable for 689 grams of methamphetamine mixture and 154.47 grams of actual methamphetamine, resulting in a base offense level of 34. PSR ¶¶ 59, 60. The 689 gram quantity was based upon information provided by Thomas C. Williams, and seizures of methamphetamine mixture. PSR ¶¶ 27-28, 38. The 154 gram quantity was based upon items found during a search of the residence and property owned by Howze's mother in August 2002, PSR ¶¶ 24-25, including a quantity of pseudoephedrine (a chemical needed to manufacture

methamphetamine), which would have yielded 52.9 grams of methamphetamine (actual));

a search at the Royalty Inn in September 2002 which resulted in the seizure of 3.44 grams

of methamphetamine (actual), PSR ¶¶ 27-28; the search of Howze's truck in September

2002, which resulted in the seizure of pseudoephedrine pills (which would have produced

89.94 grams of methamphetamine (actual)) as well as .24 gram of methamphetamine

(actual), PSR ¶¶ 30-32; and the search at the Rainbow Fountain Motel in October 2002,

which resulted in the seizure of pseudoephedrine pills which would have produced 7.95

grams of methamphetamine (actual). PSR ¶ 34-35.

At sentencing, Howze's counsel initially challenged the drug quantity amount noted

in the PSR. CR226 at 268, pages 8-14. Testimony was presented by Howze and Jason

Meyer, Howze's nephew, regarding methamphetamine quantity and quality. See CR226

at 268, pages 21-30, 48-51, 56-59. Howze's counsel conceded that even if the court

removed the quantities attributed by Williams (689 grams), they would still be at a base

offense level of 34. Id. at 113. The Government noted that the quantities Howze was being

held responsible for were "simply a drop in the bucket," "just a smidgeon of what he did"

in light of the testimony presented. Id. at 119.

The district court's reliance on the figures contained in the PSR regarding drug

quantity was correct. The guidelines instruct where there is no drug seizure or the amount

seized does not reflect the scale of the offense, the court shall approximate the quantity of

controlled substance. USSG §2D1.1 cmt. n. 12 (2003). The Court may consider "evidence

offered at sentencing to establish the amount of a [a drug] that could have been produced

by the defendants' conspiracy." *United States v. Carroll*, 6 F.3d 735, 741 (11th Cir. 1993).

The sentencing court "may properly estimate drug quantity based on available precursors

when other necessary ingredients are absent: and "may also estimate drug quantity based on the most abundant chemical even if less[ ] abundant precursors are also present." *United States v. Smith*, 240 F.3d 927, 931 (11th Cir. 2001).

Perhaps Howze's counsel made a tactical decision not to argue further drug quantity because he was afraid the district court would find that Howze was accountable for more methamphetamine based upon testimony presented at sentencing. In any event, in light of the testimony regarding pure methamphetamine cooked (three to six ounces, cooked almost daily in 2002 and two to three times a week in 2003, CR226 at 268, pages 48-50), and relevant case law, counsel's decision not to pursue the drug quantity issue was not ineffective.

Issues One at (4), Issue Three and Issue Four(b) and (c)

Howze next generally claims that his guilty pleas were induced by misrepresentations made regarding sentence enhancements, arguing that he was only advised of the drug quantity enhancement. CV-2 at 10; CV-7 at 4. This issue is also raised and specifically addressed by Howze at Issues Three and Four. CV-2 at pages 16-25; CV-7 at 6-8.

The PSR recommended the application of two specific offense characteristics: a two-level increase due to possession of a dangerous weapon (USSG § 2D1.1(b)(1)), PSR ¶61, and a three-level increase due to substantial risk or harm to human life and environment during the manufacture of methamphetamine (USSG § 2D1.1(b)(5)(B)). PSR ¶62. The PSR also recommended a four-level increase due to Howze's role in the offense as an organizer/leader of five or more participants (USSG § 3B1.1(a)). PSR ¶64. As noted above,

Howze was advised and accepted the fact that the calculation of his sentence and application of the sentencing guidelines would be determined solely by the Court.

## USSG § 2D1.1(b)(5)(B)

At sentencing, Howze's counsel objected to the environmental risk enhancement, pointing out that only one other co-conspirator has received such an enhancement and that the Government was pursuing this enhancement to punish Howze for attempting to withdraw his guilty pleas . CR226 at 268, pages 114-115. The Government responded that the enhancement was proper for several reasons, including the fact that the Government incurred costs for environmental cleanup. Id. at 120-21. The Court ultimately determined that such an enhancement was proper given the items found at the cook sites including explosive chemicals and that fact that the chemicals were transported by vehicle, rendering them "rolling bombs" on the highway. Id. at 131-32. This finding is correct. *See United States v. Whelan*, 2006 WL 2927353 at **2 (11th Cir. 2006) (copy attached at Attachment 7 to Respondent's Response).

## USSG § 2D1.1(b)(1)

Counsel also objected to the firearm enhancement, arguing that because Howze was specifically charged with a firearm in the case originating out of the Northern District of Florida, it should not be applied to the Middle District of Florida case. CR226 at 268, pages 115-117. Section 2D1.1(b)(1) provides for a two-level enhancement for an offense under 21 U.S.C. § 841(b)(1) "[i]f a dangerous weapon (including a firearm) was possessed." "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1 cmt. n. 3 (2003). "To justify a firearms enhancement, the government must either establish that

the firearm was present at the site of the charged conduct or prove that the defendant possessed a firearm during conduct associated with the offense of conviction." *United States v. Stallings*, 463 F.3d 1218, 1220 (11th Cir. 2006).

The Government argued that Howze was in the Northern District of Florida to obtain anhydrous ammonia, a chemical necessary to the production of methamphetamine (a fact admitted by Howze) CR226 at 268, pages 27, 121-22. Because the offense was the manufacture of methamphetamine, the possession of a firearm during a trip to obtain a necessary chemical is clearly connected to the offense. The Court, in ruling that the firearm enhancement was proper, noted that it wasn't "even a close question" because Howze was on a trip "at the time to steal anhydrous ammonia with which he intended to make the methamphetamine." Id. at 129. Furthermore, the Court noted that Howze was actually benefitting from the PSR calculation regarding the firearm enhancement due to grouping because he avoided a mandatory minimum consecutive sentence for the firearm. Id. at 129-131. Because of grouping, the base offense level was calculated on the methamphetamine offense, resulting in a benefit to Howze. Id. This is why Howze's counsel did not object to the PSR's offense grouping. Id. at 131-34.

### USSG 3B1.1(a)

Counsel also objected to the role enhancement, noting that there was no evidence Howze exercised decision making, did not recruit others, was not motivated by profit, and he did not assert any authority or control over the group. CR226 at 268, pages 117-119.

Section 3B1.1(a) provides for a four-level increase if the defendant is "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." "Factors that court should consider [when assessing role] include the exercise

of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." USSG § 3B1.1 cmt. n. 4 (2003); *United States v. Ballejo*, 297 F.3d 1154, 1169 (11th Cir. 2002).

The PSR noted that Howze "organized the methamphetamine conspiracy and led and directed the activities of other participants" and that the conspiracy involved at least five participants. PSR ¶64. At sentencing, the Government argued that the enhancement was proper because there was testimony that Howze instructed/recruited/led and/or directed others, the offense involved five or more, CR226 at 268, pages 122-23, and the organization was extensive in nature, id. at 123. In determining that this enhancement applied, the Court noted that it was clear that Howze was involved with others in light of his financial information which demonstrated that he was not able to purchase the necessary chemicals without the involvement of his coconspirators. Id. at 132-33. Control of the group was demonstrated by the fact that they were cooking the methamphetamine at Howze's mother's home, which Howze controlled. Id. at 133.

Howze's counsel did challenge this upward adjustment. However, the record clearly supports the district court's application of this adjustment. Accordingly, Howze has failed to show deficient performance or resulting prejudice, so he is entitled to no relief.

*Booker, Blakely, Apprendi* Error (Issue Four)[5]

---

*Apprendi v. New Jersey*, 530 U.S. 466 (2000). `United States v. Booker`, 543 U.S. 220 (2005). *Blakely v. Washington*, 542 U.S. 296 (2004).

In Issue Four, CV-2 at 25, Howze contends that *Apprendi, Booker, Blakely* were violated when his sentence was enhanced for drug quantity, role, and environmental risk. Id. at 23-24; CV-7 at 8. This allegation requires little discussion.

All these cases were decided prior to Howze's February 18, 2005, sentencing. *Apprendi* was decided by the Supreme Court on June 26, 2000 (long before Howze's plea agreements and rearraignment). The Supreme Court decided *Booker* on January 25, 2005 and *Blakely* several months earlier, on June 24, 2004. Indeed, application of the *Apprendi* decision is discussed in Howze's plea agreement. CR226 at 93, page 2. Likewise, at sentencing, Howze's counsel's mentions the *Blakely* opinion, reminding the Court that the guidelines are only advisory. CR226 at 268, page 13 (see also PSR objections). The Government also noted the advisory nature of the sentencing guidelines. Id. at 140. It is obvious from the record that all parties, including the Court, were well aware of the *Apprendi, Booker and Blakely* decisions prior to Howze's sentencing. To the extent Howze is alleging ineffective assistance of counsel as to this claim, the cases were established law by the time he was sentenced. The plea agreement mentioned *Apprendi*; at sentencing, counsel mentioned and the now-advisory sentencing guidelines. Clearly, counsel's performance was not deficient regarding this claim. Furthermore, Howze has not established that he was prejudiced, because the record clearly shows that the Court was aware that the sentencing guidelines were no longer mandatory. Because the record does not establish that his sentence would have been different, Howze cannot meet his burden of demonstrating prejudice. *See United States v. Rodriguez*, 398 F.3d 1291, 1300 (11th Cir. 2005) (defendant contending that court violated his constitutional rights by increasing his sentence based on judge-found facts under a mandatory application of the sentencing

guidelines cannot establish prejudice to his substantial rights under the third prong of plain-error review if record provides no reason to believe sentence would have been different). Howze, therefore, is not entitled to relief.

Issue One at (5) and Issue Five

Howze's last claim, that his plea was induced by misrepresentation regarding a three-level downward adjustment for acceptance of responsibility (USSG § 3E1.1(a)), is also raised at Issue Five. Howze contends that the Government opposed the three level acceptance of responsibility downward adjustment because it was vindictive after Howze attempted to withdraw his guilty pleas. CV-2 at 10-11, 25-26. Howze argues that his counsel was ineffective, making "a halfhearted effort to salvage the reduction" at sentencing and failed to advise the Court of the Government's binding agreement to recommend the departure. Id. at 11, 26.

Section 3E1.1(a) provides that if a defendant clearly accepts responsibility for his offense, the offense level can be decreased by two levels. An additional level decrease may be awarded if the defendant qualifies for a decreased under subsection (a), the offense level is 16 or higher, and if the Government makes a motion for downward adjustment "stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently". USSG § 3E1.1(a) and (b) (2003). Comments that accompany this section state that the defendant who enters a guilty plea is not entitled to an adjustment under this section "as a matter of right." USSG § 3E1.1, cmt. n.3 (2003); *United States v. Wade*, 458 F.3d 1273, 1279 (11th

Cir. 2006), citing USSG § 3E1.1, cmt. n.3, cert. denied, 2007 WL 1174361 (Apr. 23, 2007).

The defendant has the burden of "clearly demonstrating acceptance of responsibility and

must present more than just a guilty plea." *United States v. Sawyer*, 180 F.3d 1319, 1323

(11th Cir. 1999). The sentencing judge is in a unique position to evaluate a defendant's

acceptance of responsibility. USSG § 3E1.1, cmt. n.5 (2003).

During his rearraignment, Howze was advised about the adjustment for acceptance

of responsibility:

> THE COURT: Now, at the time of sentencing in this – with respect to the
> Florida – the Middle District case, Paragraph Seven provides that in the
> event that no adverse information is forthcoming, the United States will not
> oppose your request that you receive a two-level downward adjustment for
> acceptance of responsibility.
>
> And further, the Government agrees to make a motion for a further
> one-level downward adjustment for a total of three levels downward
> adjustment for your acceptance of responsibility. Do you understand that?
>
> MR. HOWZE: Yes, Ma'am.
>                                                 . . . .
>
> THE COURT: Understand also, that that's just an agreement that the
> Government made with you, that that agreement does not bind the District
> Judge. The District Judge is free to reject the agreement and impose a higher
> sentence than would be appropriate if the Court accepted the agreement.

CR484 at 27, pages 16-17.

At sentencing, the Government moved to withdraw the three level downward

adjustment for acceptance of responsibility based on Howze's motion to withdraw his guilty

plea and "his current stance in the sentencing with respect to important facts that he

already admitted to, including the gun, that I am just learning about." CR226 at 268, pages

6-7, 123-25. The Government also asked that the Court find that Howze committed perjury

and enhance his sentence under USSG § 3C1.1. Id. at 125. Howze's counsel responded

that Howze "has never not accepted responsibility" and Howze reacted normally in light of certain allegations "just not true in his mind." Id. at 126. The Court declined to make a finding on the perjury issue (with the concurrence of the parties), id. at 135, but did specifically grant the Government's motion to withdraw the acceptance of responsibility adjustment, finding that Howze's motion to withdraw his guilty plea was a "clear indication of failure to accept responsibility"and that her ruling was substantiated by the record and testimony provided at sentencing. Id. The Court's finding on this issue was not erroneous. See United States v. McCarty, 99 F.3d 383, 387 (11th Cir. 1996) (defendant did not clearly demonstrate acceptance of responsibility when he filed motion to withdraw guilty plea and protested his innocence and lack of involvement at hearing on motion to withdraw plea and at sentencing); United States v. Newson, 46 F.3d 730, 734 (1995) (supporting district court's finding that by attempting to withdraw his guilty plea, defendant failed to admit essential element of intent and did not clearly demonstrate acceptance of responsibility).

Although Howze's counsel did challenge the Government's motion to withdraw the three level acceptance of responsibility downward adjustment, the record clearly supports the district court's ruling granting the Government's motion. Accordingly, Howze has failed to show deficient performance or resulting prejudice, so he is entitled to no relief.

To prevail on his claims of ineffective assistance of counsel, Howze must establish that his counsel's performance fell below an objective standard of reasonable professional assistance and that Howze was prejudiced by the deficient performance. Howze has failed to demonstrate either. An attorney does not render ineffective assistance of counsel by failing to raise frivolous claims or investigate non-meritorious claims and defenses.

*Chandler v. Moore*, 240 F.3d 907, 917-18 (11th Cir. 2001)( citing *Nyhuis*, 211 F.3d at 1344); *Card v. Dugger*, 911 F.2d 1494, 1520 (11th Cir. 1990).

Howze has suffered no prejudice, as the magistrate judge's Rule 11 plea colloquy was very thorough. Howze's claims of alleged failures by his counsel to challenge various sentencing points are either negated by the record or do not indicate ineffective assistance because such claims are frivolous or non-meritorious. Accordingly, Howze cannot demonstrate ineffective assistance of counsel.

Accordingly, the Court orders:

That Howze's motion to vacate (CV-7; CR-65) is denied.  The Clerk is directed to enter judgment against Howze in the civil case and to close that case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ··· only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v.*

*Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on September 12, 2007.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

AUSA: Christopher Francis Murray
James E. Howze, Jr., pro se